IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JANE DOE[1]

§
v.                                    §          NO.  SA-14-CA-102-XR
                                      §
JACKIE "JACK" LEN NEAL                §
                                      §

**ORDER**

On this day came on to be heard Plaintiff's motion for default judgment (docket no. 67). The motion is granted as follows:

**Background**

Plaintiff initially filed her complaint under 42 U.S.C. § 1983 against the City of San Antonio, the Police Chief of the San Antonio Police Department (SAPD), and former SAPD officer Jackie Neal.  Plaintiff's claims against the City and the Police Chief have been settled and dismissed.  Docket no. 65.  Neal was properly served with a copy of the Complaint and Summons, but has wholly failed to answer this lawsuit.  The Clerk of Court filed an entry of default against him on March 19, 2014.  Docket no. 19.  The Court set the motion for default judgment for an evidentiary hearing (docket no. 68) and a hearing was held on June 11, 2015.

**Plaintiff's Original Complaint[2]**

In her original complaint, Plaintiff alleges that on November 22, 2013, she was traveling in her motor vehicle when she was stopped by then SAPD officer Neal, who was in uniform and

---

[1] Because this case involved the sexual assault of the Plaintiff, Plaintiff was given leave to file this case under the name Jane Doe.  Her true identity is reflected in docket no. 24, which is filed under seal.

[2] Although an amended complaint was filed in this case, the only complaint that was served on Neal is the Original Complaint.  Accordingly, the Court bases its order on the Original Complaint.

driving his SAPD patrol vehicle.  She alleges that after asking her various questions she was groped and later sexually assaulted by Neal.  Neal then threatened her not to tell anyone, stating he knew where she lived.  Plaintiff further alleges that after the assault was reported to authorities, Neal was arrested later that evening.  She alleges that upon securing bond Neal went to her residence in search of her.  Neal's visitation to her residence after he was released on bond was reported to authorities, and Neal was again arrested.  Neal has been charged by the state with sexual assault, civil rights violations and official oppression.  His trial has not yet been held on these charges.

Plaintiff alleges that Neal's acts violated her rights under the Fourth Amendment, which prohibits unreasonable searches and seizures.  She seeks actual damages and punitive damages.

**Default**

A party's default is deemed to be a concession of all well pleaded allegations of liability. *Jackson v. FIE Corp.*, 302 F. 3d 515, 524 (5th Cir, 2002).    Pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiff requested a hearing to determine damages.  Plaintiff seeks $5 million in damages.

**Plaintiff's evidence tendered in support of her claim for actual and punitive damages**

Plaintiff testified by deposition.  She testified that prior to being pulled over on November 23[3], she had never met Neal.  Exhibit 1 to June 11, 2015 hearing at p. 40.  Neal followed her in his patrol car for several blocks.  *Id*. at p.  46.  Neal claimed her car was stolen, asked if she had any drugs, asked her to step outside her vehicle, placed her in handcuffs, and

---

[3] She was pulled over in the early morning hours.  Some documents reference the assault taking place on November 22.

searched her car.  *Id*. at p. 49.  Neal placed her into his patrol vehicle.  *Id*. at p. 51.  He later took her out of the vehicle and asked her to assist him in opening the trunk to her vehicle.  *Id*.  He thereafter began to start "searching" her person.  Plaintiff objected and requested a female law enforcement officer to do any search.  *Id*.  Plaintiff remained handcuffed and Neal began to reach under her shirt and grab her breasts.  *Id*. at p. 52.  The "search" lasted for three to four minutes. *Id*. at p. 55.

Thereafter Neal removed her pants.  She began to cry and requested that Neal take her to a jail.  Neal then unzipped his pants and raped her while she was handcuffed from the back.  *Id*. at p. 58.  The sexual assault lasted for about ten minutes.  *Id*. at p. 60.  After he climaxed, Neal told her that if she said anything, he knew where she lived.  Neal then removed the handcuffs, got inside his patrol vehicle and drove off.  *Id*. at p. 61.

Plaintiff sat in her car for about five minutes and then drove to a friend's house and told her friend what had occurred.  *Id.* at p. 63.  She further testified that later that morning she had an exam at the medical assistant program in which she was enrolled.  *Id*. at pp. 27, 67.  After her instructor noticed that something was wrong, Plaintiff asked to speak to her instructor in private and explained that she had been raped.  *Id*. at pp. 67-68.  Plaintiff went to her home and told her grandmother what had occurred.  *Id*. at p. 69.  The grandmother phoned the police.  *Id*. at p. 69. A police detective interviewed her, showed her pictures of various individuals, including Neal. She identified Neal, and then she was driven to a hospital, where a rape exam was conducted.  *Id*. at 74.  Exhibits 6 and 8 to June 11, 2015 hearing.

Plaintiff was at the hospital for about four hours.  When she returned to her residence another police officer was there.  That officer was investigating the new allegation that Neal had

visited the home looking for Plaintiff.[4]  *Id*. at p. 77.  Plaintiff testified that she was in shock.  *Id*. at p. 78.  Plaintiff testified that she was extensively questioned by various police officers regarding her sexual assault complaint and was made to feel that they were questioning her, and she began to feel frustration and anger.  *Id*. at p. 89.

Since the incident, she has received counseling from Joann Murphey, Ph.D.  *Id*. at p. 115. She is now hesitant to leave her home and feels afraid.  *Id*. at p. 119.  At the time she was sexually assaulted, she had just become aware the prior week that she was pregnant.  *Id*. at pp. 124-125.  It has become hard for her to trust people and she cries on a daily basis.  *Id*. at p. 126. She expresses hatred for people.  *Id*. at p. 127.  She was 19 years of age when Neal raped her.  *Id*. at p. 128.  She has become aggressive since the rape, expresses "negativity", and has a lot of "anger in me."  *Id*. at p. 129.

Dr. Murphey opines that Plaintiff is suffering from Post-Traumatic Stress Disorder with Major Depression, mild to moderate.  *See* Exhibit 2 1 to June 11, 2015 hearing.  Dr. Murphey opines that her PTSD is "consistent with a person who has had the type of experiences" that Plaintiff is dealing with.  "[Plaintiff] is not very trusting of others and will need considerable time to build a therapeutic alliance with a therapist to assist her in dealing with her emotions from this event as well as possible pre-event issues."  *Id*.  Dr. Murphey opines that Plaintiff requires weekly individual treatment for three to five years, and estimates this treatment would cost between $35,000 to $45,000.  *Id*.

Plaintiff retained John Swiger, Ph.D. to prepare an economic analysis.  Dr. Swiger notes that on the day of the sexual assault, Plaintiff was enrolled in a medical assistant program with an

---

[4] Remarkably, Neal left his first name and telephone number with Plaintiff's relatives.

expected graduation date of June 2014.  Because of the sexual assault she withdrew from the program.  Dr. Swiger estimates that had she completed the program, it is likely she would have been retained as a medical assistant at a salary of $25,000 per year.  Dr. Swiger opines that Plaintiff's actual and future lost earnings total $334,318.  Exhibit 3 to June 11, 2015 hearing.

To re-enroll in the for-profit education facility Plaintiff was enrolled in, that facility will require a re-enrollment tuition amount of $15,522.  Exhibit 5 to June 11, 2015 hearing.

The hospital Plaintiff was sent to for the emergency visit/rape test states that the hospital "has a right to be paid" $1,478.  See Exhibit 7 to June 11, 2015 hearing.

**Damages under Section 1983 – generally**

The "basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights …."  *Carey v. Piphus*, 435 U.S. 247, 255 (1978).  "Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect."  *Id*.

"[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'  Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses."  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986).

"Damages awarded under 42 U.S.C. § 1983 are governed by common law tort principles. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994).... The Supreme Court allows recovery for actual damages as well as mental and emotional distress. " *Combs v. Holman*, 134 F. App'x 669, 670 (5th Cir. 2005). "[A] trial court has wide discretion in awarding damages. *Wheat v. United States*, 860 F.2d 1256, 1259 (5th Cir. 1988). 'Physical injury, pain and suffering, personal humiliation, mental distress, and embarrassment' are all compensable under § 1983." *Benoit v. Bordelon*, 596 F. App'x 264, 269-70 (5th Cir. 2015). "In a § 1983 action damages must be proved, rather than presumed. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 629 F.2d 993, 1005 (5th Cir. 1980).

### Punitive Damages under Section 1983

Individual officers in a section 1983 case are liable for punitive damages for their misconduct on the same basis as other individual defendants. *Smith v. Wade*, 461 U.S. 30, 35 (1983). Punitive damages in a section 1983 case are appropriate only when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others . *Id*. at 42.

### Findings of Fact and Conclusions of Law

Plaintiff has established by a preponderance of the evidence that she has suffered mental anguish and PTSD as a result of the sexual assault inflicted by Neal. Plaintiff is awarded $40,000 for future medical treatment needed as a result of this assault.

Plaintiff has established that she has suffered mental anguish damages. Given her age, the amount of therapy required, the degree of mental anguish manifested, the initial trauma

suffered and then compounded by the renewed fear that Neal sought after her once he was placed on bond, the court awards $750,000.  *See Meyer v. Nava*, No. 04-4099-RDR, 2007 WL 3046583, at *3 (D. Kan. Oct. 17, 2007) ($750,000 for emotional and mental distress inflicted when plaintiff was raped by a jail employee); *Cash v. Cnty. of Erie*, No. 04-CV-0182-JTC(JJM), 2009 WL 3199558, at *3 (W.D.N.Y. Sept. 30, 2009) ($500,000 award for emotional distress caused by sexual abuse inflicted by a jailor upon an inmate in his custody); *Hall v. Terrell*, 648 F. Supp. 2d 1229, 1232 (D. Colo. 2009) (non-economic damages of $350,000 for emotional distress, mental anguish, and suffering).

Plaintiff has established by a preponderance of the evidence that she has suffered actual and future lost earnings of $334,318.  In the absence of this assault, it is likely that she would have graduated from her medical assistant program.

Plaintiff has established by a preponderance of the evidence that she has suffered damages in the form of re-enrollment fees to re-enroll in her medical assistant program in the amount of $15,522.

Plaintiff has established by a preponderance of the evidence that she has suffered past medical expenses in the amount of $1,478.

The Court shall also award punitive damages in the amount of $1,000,000.00 for Plaintiff and against Neal.  The court finds that the actions of Neal were motivated by evil intent and with a callous indifference to the federally protected rights of Plaintiff.  The Court believes this sum is adequate and reasonable to punish Neal.  While in uniform and in a patrol vehicle, Neal spotted a vulnerable, young person travelling alone in the early morning hours and decided to rape her.  He did so using his SAPD issued handcuffs and on a public road.  He then threatened her not to tell

anyone because he knew where she lived, and once he was arrested and released, he brazenly made good on his threat and went to the victim's home in search of her. *See Lewis v. Pugh*, 289 F. App'x 767, 777 (5th Cir. 2008) (rape by police officer and review of a $250,000 punitive damage award; "utilizing a position of trust to rape and assault a vulnerable woman, is particularly reprehensible. Second, the ratio between the punitive and compensatory damages in this case is 5:1, a ratio not so disproportionate as to 'jar one's constitutional sensibilities.'").  In this case the ratio between punitive damages and compensatory damages is approximately 1:1.

The Court finds that Plaintiff is entitled to attorney's fees under 42 U.S.C. § 1988. Plaintiff's counsel shall submit documentation in support of their request for fees within ten days of the date of this order.

IT IS THEREFORE ORDERED that Plaintiff is awarded damages of $2,141,318 against defendant JACKIE "JACK" LEN NEAL in his individual capacity. This amount consists of $1,141,318 in compensatory damages and $1,000,000.00 in punitive damages.

IT IS FURTHER ORDERED that Plaintiff is awarded attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiff's counsel shall submit documentation in support of their request for fees within ten days of the date of this order.

IT IS FURTHER ORDERED that Plaintiff is awarded costs of court.  Plaintiff should submit any costs in the form prescribed by the Clerk of Court.

SIGNED this 12th day of June, 2015.


_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE